THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| ROXANNE TAUFER, | ) | Case No. 2:13CV0077 DS |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM DECISION |
| CAROLYN COLVIN, ACTING Commissioner of the Social Security Administration, | ) ) | |
| Defendant. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## I.   INTRODUCTION

Plaintiff Roxanne Taufer filed an application for Social Security benefits alleging a disability beginning on July 20, 1984 (amended at the hearing to July 1, 2006). Tr. 69, 164. Ms. Taufer alleged disability based on cerebral palsy, borderline IQ, reading and math disorders, carpal tunnel syndrome, depression and anxiety. Tr. 69. After a hearing, an administrative law judge ("ALJ") concluded at step five of the five-part sequential evaluation process, *see* 20 C.F.R. § 416.920, *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988), that Plaintiff was not disabled because she could perform other jobs in the national economy.  Her request for review was denied by the Appeals Council.  She now seeks judicial review of the decision of the

1

Commissioner of Social Security denying her claim for benefits.

Plaintiff contends that prejudicial error occurred when the Appeals council failed to consider subsequently submitted evidence; the ALJ erred in failing to recognize documented bilateral arm and psychological impairments which would prevent Ms. Taufer from performing any work in the national economy; and the ALJ failed to support his credibility findings with substantial evidence.

## II.   STANDARD OF REVIEW

The Court reviews the ALJ's decision only to determine if the factual findings are supported by substantial evidence and if he applied the correct legal standards.  *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 289 (10th Cir. 1995).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation and citation omitted).  The Court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995).

## III.   DISCUSSION

### A. Subsequently Submitted Evidence

The court has considered plaintiff's argument that the appeals council failed to consider subsequently submitted evidence. The new evidence consists of psychological and IQ

2

testing performed by Dr. Kotter on September 13, 2012. Tr. 9-20. The court agrees with plaintiff that the new evidence relates to the period on or before the date of the ALJ's decision, because IQ remains fairly stable throughout one's life, absent an intervening event. Plaintiff's Opening Brief at 10-11 citing *Muncy v. Apfel*, 247 F.3d 72 (8th cir. 2001). Nevertheless, this is not the only factor to consider. Despite it's relevance, the court concurs with defendant that the evaluation's findings would not have changed the ALJ's decision. Defendant's Answer Brief at 21. The ALJ's opinion was supported by the record and the totality of the evidence. Highly supportive of this conclusion is the ALJ's finding as follows:

> [T]he claimant has not established the necessary criteria for a meeting or medically equaling of listing 11.07 or any other listed impairment. In his brief, the claimant's representative concedes that the claimant does not have an IQ score of 70 or less, as required for listing section 11.07A, and that the claimant does not have disorganization of motor function as described in 11.04B, necessary for meeting listing 11.07D(See Exhibit 12E). Therefore, without the necessary criteria being satisfied, the undersigned finds that the claimant's cerebral palsy does not meet or medically equal listing 11.07A or D. In making this finding, the undersigned notes that the record establishes a full-scale IQ score of 78, and that the claimant does not have significant and persistent disorganization of motor function of two extremities, resulting in sustained disturbance of gross and dexterous movement, or gait and station. Although the claimant's representative contends that the claimant's working memory index score of 63 and verbal comprehension index score 72 qualify to meet or equal listing 11.07A, the undersigned disagrees.

Tr. 28-29.    Considering the facts, as opposed the conclusions

3

presented by plaintiff, the revised IQ score of 72 is higher than the 70 or less required for listing section 11.07A. Furthermore, even considering the new evidence, Dr. Kotter found "a full scale IQ of 72, . . . [and] a 95% chance that her true IQ falls within the range of 68 to 77." Tr. 12.

Hence the court finds, as noted by defendant in its brief at 21, that the new evidence was not different in a significant way from the findings of Dr. Allen, who evaluated Plaintiff in February 2011 and whose findings were considered by the ALJ. (Tr. 28-29, 35, 272-276). The IQ score considered by the ALJ as well as the IQ score and likely range presented in the new evidence, as well as Dr. Kotter's other findings that plaintiff had major depressive disorder, recurrent, mild; generalized anxiety disorder; mathematics and reading disorders; and borderline intellectual function fall within the reasonable consideration and conclusions of the ALJ and the ALJ's findings were supported by substantial evidence as well as the totality of the evidence, with or without the new evidence.

**B. Evaluation of Plaintiff's Residual Functional Capacity**

Plaintiff claims the ALJ failed to include all impairments supported by the record in his residual functional capacity ("RFC") finding. Plaintiff argues that the ALJ found few mental limitations in his RFC compared to the DDS report that found at least moderate limitation in completing a normal workday and

workweek. Tr. 311-314.  In addition, math and reading limitations were allegedly not given appropriate consideration and the ALJ findings are inconsistent with the three jobs the Vocational Expert ("VE") concluded were available in significant numbers in the national economy. And last, plaintiff argues reversible error based on the weight given by the ALJ to Ms. Taufer's long-term treating physician's opinions versus the DDS opinions. Accordingly, plaintiff argues the ALJ incorrectly assessed her RFC.

"The determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities. See Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *2, *5. The final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence. See 20 C.F.R. §§ 404.1527(e)(2); 404.1545(a)(3); 404.1546©. *Young v Barnhart,* 146 F. Appx 952, 955 (10th cir. 2005)(unpublished)(citing SSR 96-5p). The court finds the ALJ properly carried out his assessment responsibility in plaintiff's case.

This court considers the record as a whole in reviewing plaintiff's claims on appeal.  In short, the ALJ found that plaintiff had the RFC to perform a limited range of sedentary work. Tr. 30-31.  The ALJ based this decision on the objective

medical evidence and relied on the opinions of Dr. Fyans, who physically examined Plaintiff in May 2011 (Tr. 331-336), and Dr. Allen who conducted a consultative examination in February 2011, (Tr. 272-276). Both Drs. Fyans and Allen concluded that plaintiff's impairments, while significant, were not disabling. The ALJ's reliance on these conclusions was not misplaced. The ALJ also relied on the opinions of Drs. Burkett and Peterson, nonexamining state agency medical consultants, who reviewed the medical record in January 2011 and concluded that Plaintiff was capable of performing a range of light work. Tr. 285-287, 303-310, 341. Even with this recommendation, the ALJ combined these findings with the plaintiff's self-reported limitations, as well as the record evidence, to further limit plaintiff exertionally to sedentary work. Tr. 30.

Regarding plaintiff's mental limitations, plaintiff argues that the ALJ, without explanation, disregarded the testimony and evidence provided that Ms. Taufer had limitations in concentration, persistence and pace that would not be tolerated in any job. To the contrary, the ALJ "weighed the opinion evidence regarding the claimant's mental condition," (Tr. 35)including the opinions of Dr. Allen and nonexaming state agency psychological consultants and found consistent, substantial evidence supported by the record, that with the mental limitation of the residual functional capacity, plaintiff

is able to perform some work-related activity. Tr. 35.

Finally, regarding plaintiff's claims that the ALJ failed to give appropriate weight to Dr. Lytle's opinion, the "Treating Physician Rule" states:

> According to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources. 20 C.F.R. §404.1527(d)(2). "In deciding how much weight to give a treating source opinion, an ALJ must first determine whether the opinion qualifies for 'controlling weight.' " Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir.2003). To make this determination, the ALJ:
>
>> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is 'no,' then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. [I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight.
>
> Id. (quotations omitted); see also § 404.1527(d)(2).
>
> Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§ ] 404.1527.' " Id. (quoting Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4).
>
> Those factors are:
>
> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4)

>     consistency between the opinion and the record as a
>     whole; (5) whether or not the physician is a specialist
>     in the area upon which an opinion is rendered; and (6)
>     other factors brought to the ALJ's attention which tend
>     to support or contradict the opinion.
>
>     Id. at 1301 (quotation omitted).

*Langely v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004) (citing *Watkins. V. Barnhart*, 350 f.3d 1297, 1300, 1301 (10th Cir. 2003)). Applying this rule to the facts and evidence in this case, the court finds the ALJ did not err in evaluating the opinion of Dr. Lytle, plaintiff's treating physician. It is clear the ALJ considered Dr. Lytle's findings and compared them to the findings of Dr. Fyans and plaintiff's self reporting and therefore properly evaluated the medical and nonmedical evidence of record. The weight given was discussed, even if not quantified. Furthermore, reviewing the notes of her treating physican independent of the ALJ's opinion, the court finds plaintiff's self-reported restrictions described in connection with her application inconsistent with the treatment records and her self-reporting to her treating physician. Tr. 32, 267-71, 427-42,531-36.

Accordingly, the court agrees with defendant's summation that "the ALJ's decision [was] sufficiently specific to make clear to any subsequent reviewers [including this court] the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Defendant's Answer Brief at 18,

citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th cir. 2007)(citation and internal quotation marks omitted).

Finally, addressing the arguments regarding plaintiff's credibility, the ALJ found that "after careful consideration of the evidence, the undersigned finds that the claimant's severe and extreme allegations are somewhat out of proportion and not reasonably consistent with the medical record and all other evidence. Therefore, the claimant's allegations are not fully persuasive. . . . [and the ALJ finds] that the claimant can perform at a higher level than she states or perceives she can." Tr. 32. The court has reviewed the record in its entirety and concurs with the conclusion of the ALJ. The ALJ considered opinion evidence, medical evidence, plaintiff's own treatment records, examining and nonexamining physician evaluations. Thus, the court finds the ALJ's credibility determination was "closely and affirmatively linked to substantial record evidence." *Wall v. Astrue,* 561 F.ed 1048, 1070 (10th Cir. 2009) (citation and internal quotation marks omitted). See also Defendant's Answer Brief at 11-15.

## IV. CONCLUSION

A careful and thorough review of the record in plaintiff's case confirms that there is substantial evidence to support the findings of the ALJ that plaintiff is not disabled within the meaning of Title XVI of the Act. Accordingly the decision of the ALJ is affirmed.

SO ORDERED.

DATED this 13th day of January, 2014.


_____
David Sam
Senior Judge
United States District Court